Lane v. Hyder.

HENRY LANE, Respondent, v. H. H. HYDER and J. B. HYDER, Appellants.

**Kansas City Court of Appeals, May 13, 1912.**

1. **NEGOTIABLE INSTRUMENTS: Extension of Time: Liability of Surety.** A signer of a joint and several promissory note is not, although known by the payee to be a surety, discharged by the granting of an extension of time to the principal debtor.

2. ————:·**Continuation of Negotiability.** An instrument, negotiable in its origin, continues to be negotiable until it has been restrictively endorsed or discharged by payment, or otherwise.

3. ————: ————: **Primary Liability.** Under Section 10089, Revised Statutes 1912, an extension of time for the payment of a promissory note to the principal debtor does operate to discharge a surety primarily liable.

Appeal from Clay Circuit Court.—*Hon. Francis H. Trimble,* Judge.

AFFIRMED.

*W. E. Fowler* and *Claude Hardwick* for appellant.

*O. E. Robinson* and *Martin E. Lawson* for respondent.

BROADDUS, J.—This is an action to recover on two negotiable promissory notes executed by H. H. and J. B. Hyder, one on January 27th, and the other on February 14, 1908, and made payable to the plaintiff. One of the notes reads as follows:
"$150.00                                    1-27th, 1908.

"Ninety days after date we promise to pay to the order of Henry Lane, one hundred and fifty dollars, for value received, negotiable and payable without defalcation or discount and with interest from date at the rate of eight per cent per annum, and if the interest be not paid annually to become principal and bear the same rate of interest until paid.

H. H. HYDER,
J. B. HYDER."

"Indorsements: This note is hereby extended ninety days from m't'y. Received on the within $3.00 for int. July 27, Received on the within $2.00 int, This note extended from Aug. 27, to Nov. 27, 1909."

The other is the same kind of a note and is for the sum of seventy dollars, payable in ninety days after date. And on the back thereof were indorsements of receipt of interest and notations of extension of time of payment. H. H. Hyder made no defense to the action. The defendant, J. B. Hyder, defended on the ground that he was surety for his codefendant and that time for payment was extended for a valuable consideration by agreement between plaintiff and H. H. Hyder without his consent or knowledge, whereby he was in law discharged as such surety. The court excluded the evidence offered in support of this defense and rendered judgment for the amount of the notes and interest unpaid. The defendant, J. B. Hyder, appealed.

It is the contention of appellant that the court committed an error in refusing to admit the evidence tendered in support of his defense.

The notes were executed since the adoption of chapter 86, entitled "Negotiable Instruments," and the question is to be determined by a construction of said act. So far as we know the question is a new one in this state. Prior to the adoption of said chapter, as it now stands, it was the well settled law of the state that an extension of time of payment for a valuable consideration paid by the principal of a note without the consent of the surety operated to discharge the surety.

Section 10161 defines the status of persons connected with negotiable instruments; it reads: "Persons primarily and secondarily liable. The person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required

163 App.—44

to pay the same. All other parties are secondarily liable.''

Section 10089 reads: ''Negotiable instruments, when discharged. A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debtor; (2) by payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; (3) by the intentional cancellation thereof by the holder; (4) by any other act which will discharge a simple contract for the payment of money; (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right.''

Section 10090 reads: ''A person secondarily liable on the instrument is discharged: (1) By any act which discharges the instrument; (2) by intentional cancellation of his signature by the holder; (3) by the discharge of a prior party, except when such discharge is had in bankruptcy proceedings; (4) by a valid tender of payment made by a prior party; (5) by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; (6) by an agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved.''

It is contended by appellant that after maturity of the notes they ''ceased to be negotiable instruments,'' and that thereafter ''anything done that would be a defense for, or operate as a discharge of, either maker of the notes, would be available the same as if the notes had never been negotiable.'' It is not true that a negotiable instrument ceases to be such after maturity. Section 10017 provides that: ''An instrument negotiable in its origin continues to be negotiable until it has been restrictively indorsed or dis-

charged by payment or otherwise.'' Yet it is true that one who takes it thereafter takes it subject to all the prior equities the maker may have against the original payee. And we do not understand that after the notes became due the relation of the parties to the instruments under the statute was changed. Under section 10061, supra, the appellant was primarily liable because he was absolutely bound to pay, and his obligation, in that respect, was equal with his·comaker.

The appellant relies upon the law as announced in Morehead v. Citizens' Deposit Bank, 113 S. W. 501, a Kentucky case. A Mr. Morehead was indebted to the bank in the sum of $750, which was evidenced by his promissory note. At the instance of the bank the maker's father signed a collateral note in a similar amount as security for the payment of the note of his son. Without the knowledge or consent of the father, the original note, for a valuable consideration, was renewed three or four different times. The holding is that the maker of the collateral note was prejudiced by the renewals without his knowledge or consent. In that case the maker of the collateral note was not primarily bound to pay the original note, but was secondarily bound to pay it, and stood discharged under subdivision 6 of said section 10090.

In Ohio the statute governing negotiable instruments is like that of Missouri. It is there held that sureties upon negotiable instruments who are primarily liable thereon cannot be discharged other than as provided by section 3175 of the Ohio code. [Richards v. Market Exchange Bank, 26 L. R. A. 99.] This section is the same as section 10089 of our statute. An extension of time for payment does not under said section operate to discharge a surety primarily liable as it would under section 10090 if the surety was secondarily liable. ''A signer of a joint and several promissory note is not, although known by the payee to be a surety, discharged under the negotiable instruments

law by granting an extension of time to the principal debtor.'' [Vanderford v. Farmers' Bank, 10 L. R. A. 129 or 105 Md. 164.] A similar conclusion was reached in Bradley Engineering Co. v. Heyburn, 106 Pac. Rep. 170, by the Supreme Court of Washington. And such is the holding in Wolstenholme v. Smith, Supreme Court of Utah, 97 Pac. Rep. 329.

The notes in suit at common law were joint obligations of the defendants, but by reason of the provisions of section 2769, Revised Statutes 1909, they become both joint and several obligations and, as such, created a primary liability. Such being the case, it is clear that the extension of time for the payment of said notes did not have the effect under the statute of relieving the appellant from liability. It is only in instances where primary liability does not exist, as in the Kentucky case, that an extension of time for payment releases the security. So far as we have examined, the courts of other states uniformly so hold. Such being our view of the law the cause is affirmed. All concur.