EDWIN LONG, Appellant, v. DAVID SHAFER, Z. T. DENISON, J. W. CANTRELL, and WILLIS MURPHY, Respondents.

Springfield Court of Appeals, December 12, 1914.

1. **BILLS AND NOTES: Facts Stated.** Action on a promissory note. Facts stated by the court.

2. ————: **Holder in Due Course: Payee Not: Statutory Provisions.** The payee of a negotiable note is not a holder in due course within Sec. 10022, R. S. 1909, the instrument not having been negotiated to him. Hence such note is subject to equities under Sec. 10028, R. S. 1909.

3. ————: **Negotiable Instruments: Statutory Provisions.** An instrument negotiated, when (Sec. 10001, R. S. 1909): Distinction between a holder and a holder in due course (Secs. 10022, 10027, 10028, R. S. 1909); Negotiable instruments subject to same defenses as non-negotiable, except when (Sec. 10028, R. S. 1909).

4. ————: **Negotiability Not Essential to Validity: Defenses.** Negotiability is not essential to the validity of a promissory note and the mere fact that it is negotiable in form does not, as between maker and payee, deprive the former of any defenses thereto that he would otherwise have.

5. ————: **Original Parties: Parol Evidence Admitted for What.** Action on note between original parties. Defendants signing as makers were entitled to show by parol evidence that they were in reality only sureties on the note and not makers. (STURGIS, J., dissenting.)

6. ————: **Original Parties: Parol Evidence: Release.** Action on promissory note between original parties. Defendants were entitled to show by parol that, being accommodation makers or sureties, a release by the payee of collateral security without their consent acted as a release to them *pro tanto.* (STURGIS J., dissenting.)

185MoApp41

Appeal from Texas County Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED (*certified to Supreme Court*).

*C. C. Bland* and *Holmes & Holmes* for appellant.

(1) Plaintiff was a holder for value of the note (sec. 9998, R. S. 1909), and the defendants having signed the same as makers were primarily liable thereon (sec. 10161, R. S. 1909), and their engagement to pay it according to its tenor was absolute (secs. 10161 and 10030, R. S. 1909). McCarty v. Smith, 97 Pac. 329; Vanderford v. Farmers and Merchants Bank, 105 Md. 164; S. C., 10 L. R. A. 129; S. C., 66 Atl. 47; West v. Stubblefield, 17 App. Cases (D. C.), 283; Union Trust Co. v. McGinty, 212 Mass. 205; S. C., Ann. Cases, 1913 C., 525; S. C., 98 N. E. 679. (2) Parol evidence was inadmissible to show that the defendants signed the note as sureties or accommodation makers. Citizens Bank v. Douglas, 178 Mo. App. 664, 161 S. W. 608; Lane v. Hyder, 163 Mo. App. 692; and cases under Point I, supra. (3) Though the defendants did sign the note as accommodation makers, and Long, the payee, had knowledge of that fact, yet they were primarily and absolutely liable thereon. Sec. 10000, R. S. 1909; Ranse v. Wooten, 140 N. C. 557; American State Reports, 875; 53 S. E. 430; Cellers v. Meachem, 49 Ore. 186; S. C., 89 Pac. 426; Vanderford v. Merchants and Farmers Bank, 105 Md. 164; S. C., 66 Atl. 47; Union Trust Co. v. McGinty and cases cited under points 1 and 2.

*Hiett & Scott* and *Lamar, Lamar & Lamar* for respondents.

(1) Long, the payee in the note, is not a holder in due course, because it was never negotiated to him,

but he is simply a holder, whose rights are clearly defined by section 10028. It is apparent from this that all defenses are open to respondents that would be open if the note were nonnegotiable. Crawford on Negotiable Instruments (2 Ed.), p. 5 (note A.); Bunker on Negotiable Instruments, p. 23, note 1; Brannan on Negotiable Instruments (2 Ed.), p. 1 (note 1); Selover on Negotiable Instruments, par. 2; Westburg v. Chicago Lbr. Co., 94 N. W. 574. (2) As between the immediate parties, it is competent for defendant to show that he is an accommodation maker, and to set up any equities that may be set up under the law merchant or common law. Crawford on Negotiable Instruments, p. 35, sec. 54, note A; Crawford on Negotiable Instruments, p. 58, sec. 97, note A; Ogden on Negotiable Instruments, sec. 142, p. 132; Daniels on Negotiable Instruments (6 Ed.), p. 1477, sec. 1312; Selover on Negotiable Instruments (2 Ed.), p. 325; Branan on Negotiable Instruments (2 Ed.), p. 117 and note; Fullerton Lbr. Co. v. Snouffer, 117 N. W. 50; Haddock v. Haddock, 85 N. E. 683. (3) If the payee of a note, knowing that some of the parties liable on the note are accommodation makers and so knowing takes from the principal debtor collateral security and disposes of it or permits the principal debtor so to do and thereby renders such security unavailable to the accommodation makers, then the accommodation makers are discharged to the extent of the value of the security or to the extent of the damage done them. Colebrooke Collateral Securities (2 Ed.), sec. 212, page 388; 27 Eng. and Am. Ency. of Law (2 Ed.), page 516; Fergerson v. Turner, 7 Mo. 497; Lakenan v. Trust Co., 147 Mo. App. 48; 7 Cyc. page 1046. (4) That parol testimony is admissible to show who is principal and who is surety to a note has been the declared law of this State ever since 1845. Garrett v. Fergerson, 9 Mo. 125; Bank v. Wright, 53 Mo. 153-154; Hardester v. Tate, 85 Mo. App. 624;

Ins. Co. v. Broyles, 78 Mo. App. 364. This was also the common law. 8 Cyc., page 262; 1 Eng. and Am. Ency. of Law (2 Ed.), page 343.

STATEMENT.—This is an action on a promissory note for $4000 bearing interest at the rate of eight per cent per annum dated at Rolla, Mo., March 10, 1910, payable one year after date to Edwin Long, signed by Peter T. Mason, David Shafer, Z. T. Denison, J. W. Cantrell and Willis Murphy.

As security for the payment of this note Peter T. Mason executed a deed of trust on land in Texas county, Missouri, of value sufficient to pay the note and interest that might accumulate thereon.

The parties signing the note all resided in Texas county. The payee resided at Rolla, in Phelps county.

In 1912, Peter T. Mason negotiated a sale of fifty-seven acres of the land covered by the deed of trust to one Helton, and at Mason's request, and without the knowledge of the other signers of the note, Long executed to Mason a deed releasing the fifty-seven acres from the lien of the deed of trust. Mason thereafter made a warranty deed conveying the fifty-seven acres to Helton, for which he received $2000, of which he paid Long $595.16 which was credited on the note. After the suit was commenced, Long had his deed of trust on the land not released foreclosed by sale by the trustee. The net proceds of this sale, $3444.50, was placed as a credit on the note, and a supplemental petition filed stating these facts. Mason having removed from the State before the action was brought, no service of process was had upon him and plaintiff dismissed his action as to him.

To the supplemental petition the other four defendants filed a joint answer, in which, after admitting that they severally signed the note, for an affirmative defense alleged in substance that they were not parties to and did not receive any part of the money loaned

and that it all went to Mason; that they signed the note as accommodation makers; and set up the release of the fifty-seven acres of land by Long from the lien of the deed of trust without their knowledge or consent, the sale of the fifty-seven acres so released to Helton for $2000, the receipt of the purchase price by Mason and the appropriation of it all except the sum of $595.16 to purposes other than the payment of the note; also, that had the proceeds of said sale, $2000, been credited on the note the same would have been fully paid; and that they would not have signed the note had not Mason executed the deed of trust to secure the same.

The plaintiff's demurrer to this affirmative plea on the ground that it stated no legal or equitable defense to plaintiff's cause of action was by the court overruled.

A jury was waived and the cause tried by the court.

Plaintiff introduced the note sued on and rested. Defendants over the objection of plaintiff read in evidence the trust deed to Long securing the payment of the note sued on, Long's deed of release of fifty-seven acres of the land described in the deed of trust, and Mason's warranty deed of the fifty-seven acres to Helton. These deeds were all properly acknowledged and were duly recorded.

Plaintiff duly objected to the introduction of any evidence; objected to the deeds as evidence; objected to the testimony of the four defendants that they signed the note as *sureties;* all for the reason that the answer set up no legal or equitable defense to the action, and that oral evidence was inadmissible to show that defendants signed the note as sureties, and that defendants could not show by parol evidence that their obligation to pay the note was not absolute; which objections were overruled and exceptions saved. At the close of the case plaintiff demurred to defend-

ants' evidence which was overruled and exceptions saved.

The court found the issues for the defendants. No declarations of law were asked or given, except as above noted. Plaintiff has appealed.

## OPINION.

FARRINGTON, J.—The issue in this court is made clear by the following language appearing in the brief of learned counsel for appellant:

"We concede that, under the law as it existed prior to the adoption of the uniform negotiable instruments act in 1905, it was competent to show by parol evidence that one who signed a negotiable instrument ostensibly as a maker signed as a surety and that the holder had knowledge of the fact, and that upon proof of these facts and proof that the holder had extended the time of payment for a consideration moving from the principal, without the assent of the surety he was thereby discharged from all liability on the instrument; also that if the holder held any property of the principal to secure the note, or other security for its payment, and without the assent of the surety gave up such property or released the other security, the surety was discharged to the extent of the property surrendered or the security released.

"We further concede that if these special defenses are available to a surety under the uniform negotiable instruments act, then the judgment was for the right party and should be affirmed.

"Our contention is that both of these defenses have been abrogated by the uniform negotiable instruments law, and that if one signs a negotiable instrument as an accommodation maker, without consideration, and wishes to be secured, he must take the security to himself, or by express contract with

the payee agree that the latter shall take and hold the security for his protection."

It is stated in the briefs for both sides that the uniform negotiable instruments act was not intended to make new law, but that, with few exceptions, it is a codification of the rules of the law merchant as declared by the best and most authoritative decisions.

Counsel for appellant also state that they do not contend that extrinsic evidence is not admissible in actions between the parties to a negotiable instrument to show want of consideration, fraud, mistake, illegality, or duress, or to explain an ambiguity, when such explanation is not inconsistent with the written terms.

Appellant contends that where the act speaks it controls, and that prior conflicting adjudications must be held for naught, citing Merchants and Farmers Sav. Bank v. Kallerjohn, 137 Ky. 427, 125 S. W. 1071, Ann. Cas. 1912, A, 439; and First Nat. Bank of Shawano v. Miller, 139 Wis. 126, 120 N. W. 820, 131 Am. St. Rep. 1040. Also, that an examination of the act will reveal that the word "surety" is nowhere mentioned in it, and that the liability of makers and indorsers of these instruments is classified as "primary" and "secondary;" and that the obligation of makers and accommodation makers of negotiable notes is primary and absolute, citing sections 10161 and 10030, Revised Statutes 1909. Furthermore, that section 10089, Revised Statutes 1909, prescribes the only methods by which a maker can be discharged, whether he be in fact a principal or an accommodation maker. Appellant contends that sections 10000, 10089 and 10161, Revised Statutes 1909, when read together, leave no opening whereby parol evidence can be admitted as against a *holder for value* to modify the absolute liability incurred by the signing of the note as makers. Also, that since Long paid full value for the note he is a *holder for value*.

Long is not a *holder in due course* because the instrument was not *negotiated* to him. There is no call for a lengthy discussion about this because the statute (Sec. 10022, R. S. 1909) is explicit. Now section 10028 provides that "in the hands of any holder other than the holder in due course, a negotiable instrument is subject to the same defenses as if it was nonnegotiable." Hence this case is lifted bodily out of the governing power of the uniform negotiable instruments act.

Section 10001 defines when an instrument is *negotiated,* and does not include the *handing over* of a promissory note by the maker to the payee. The act, in sections 10022, 10027 and 10028, makes a distinction between a *holder* and a *holder in due course.* To shut off the defense here set up, the holder must bring himself within the terms of sections 10027 and 10028, the note must have been *negotiated* to him. The maker handing his note to the payee is not a negotiation of the instrument, and such payee is a holder other than *in due course,* and thus falls within the terms of section 10028.

This leaves the case to be controlled by the common law or law merchant (section 10165), and appellant has conceded that if the common law is to govern, the defense set up here is permissible. [See Fullerton Lumber Co. v. Snouffer (Iowa), 117 N. W. 50.] As said in the case just cited: "Negotiability is not necessary to the validity of a promissory note, and the mere fact that it is negotiable in form does not, as between the maker and payee, deprive the former of any defense thereto that he would otherwise have." [See, also, Crawford's Annotated Neg. Instr. Law (2 Ed.), sec. 54, and sec. 97 followed by a footnote in which it is said: "In an act designed to be uniform in the various States, no more can be done than fix the rights of holders in due course." Also: Ogden Negotiable Instruments, sec. 142, page 132; Daniel on

Negotiable Instruments (6 Ed.), Vol. 2, sec. 1312, page 1478; Stone v. Goldberg & Lewis, 60 So. 744; Goldberg & Lewis v. Stone, 65 So. 454; Haddock v. Haddock, 85 N. E. 682.] In the case last cited this language appears: ''There is no reason that we can conceive why the Legislature should intend to change the rule in regard to the admission of parol evidence as it has existed in this State for many years. All of the quotations show that it had enlarged rather than restricted the rules allowing parol evidence to show the true liability and relation of the parties whose names appear upon the bill or note in all actions *between themselves.*'' It is therefore clear that defendants had the right to show by parol that they were sureties only on the note. And since the negotiable instruments law does not govern the case and the rules of the common law are to be looked to, there is but one conclusion to be drawn from the Missouri decisions which is that the release of the collateral security on the part of the payee in the note without the consent of the accommodation makers released the latter *pro tanto*—to the extent of the value of the lien so discharged. [Ferguson v. Turner, 7 Mo. 497; Lakenan v. Trust Co., 147 Mo. App. 48, 126 S. W. 547; 27 Am. and Eng. Ency. Law, pp. 516, 517.] The following cases hold that parol evidence is admissible to show who is principal and who is surety on a note: Garrett v. Ferguson's Admrs., 9 Mo. 124; Mechanics' Bank v. Wright, 53 Mo. 153; Hardester v. Tate, 85 Mo. App. 624; Reynolds v. Schade, 131 Mo. App. 1, 109 S. W. 629.

Appellant cites Lane v. Hyder, 163 Mo. App. 688, 147 S. W. 514, and Citizens' Bank v. Douglass, 178 Mo. App. 664, 161 S. W. 601, as authority for his contention that parol evidence is inadmissible to show that the defendants signed the note as sureties or accommodation makers. These cases discuss the question as to whether under the negotiable instruments

law a surety is discharged by an extension of time given the principal debtor, holding that he is not discharged. [See, also, Vanderford v. Farmers' & Mechanics' Natl. Bank, 66 Atl. 47, 10 L. R. A. (N. S.) 129, and note; Richards v. Market Exchange Bank Co., 90 N. E. 1000, 26 L. R. A. (N. S.) 99, and note; Cellers v. Lyons, 10 L. R. A. (N. S.) 133, 89 Pac. 426; Bradley Enginering & Manufacturing Co. v. Heyburn, 56 Wash. 628, 106 Pac. 170, 134 Am. St. Rep. 1127; Wolstenholme v. Smith, 34 Utah, 300, 97 Pac. 329; Union Trust Co. v. McGinty, 212 Mass. 205, 98 N. E. 679, 28 Am. and Eng. Ann. Cas. 525.]

In the case of Lane v. Hyder, supra, the action was between the payee in the note and a comaker who attempted to defend on the theory that he was only a surety on the note and that plaintiff without his consent or knowledge extended the time of payment. It was held that under the negotiable instruments law the surety was primarily liable on the note, and that under section 10089, Revised Statutes 1909, providing how negotiable instruments may be discharged, an extension of time of payment does not discharge the surety. That case is a direct authority in favor of the contention made by the appellant in our case. The case of Citizens' Bank v. Douglass only incidentally passes on the question and approvingly cites Lane v. Hyder; but an entirely different question was up for decision in the Douglass case than that presented in the Hyder case and different from that presented in this case.

There may be some nice distinction between the effect, so far as a surety or accommodation maker is concerned, of an extension of time by the holder and a release of collateral security by the holder; but the principle that would hold or release an accommodation maker in the one case ought to hold or release him in the other. [See section 10000, R. S. 1909.]

The cases last cited and those referred to therein
as authorities, holding that under the negotiable in-
struments law a person primarily liable such as a
surety or accommodation maker is not discharged by
an extension of time for payment without their knowl-
edge or consent, have not escaped criticism. Witness,
31 L. R. A. (N. S.) 150, note: "So few cases have
passed upon the question that this doctrine cannot be
said to be firmly established, especially in view of the
fact that it is contrary to the previously well-settled
doctrine relating to the discharge of a surety. It is
doubtful if the intention of the framers of the ne-
gotiable instrument act was thus to change and over-
turn so well-settled a principle of law, neither inequi-
table nor unjust in its application." It should be said
of the Hyder and Douglass cases that at no place in
the opinions does it appear that the attention of the
court was ever called to sections 10001, 10022, 10027
and 10028, Revised Statutes 1909. We believe that
had such sections been noticed by the court in the
Hyder case the result would have been different.

The following cases, and many others cited, dis-
cussing this phase of the negotiable instruments act
and holding that an accommodation maker is barred
from showing such fact, appear to be suits by *indor-
sees* and not the original payees: National Citizens'
Bank of New York v. Toplitz, 81 N. Y. Supp. 422; Wol-
stenholme v. Smith, 97 Pac. 329; Security Trust & Safe
Deposit Co. v. Duross, 86 Atl. 209; Mersick v. Alder-
man, 60 Atl. 109; Tatum v. Commercial Bank & Trust
Co., 64 So. 561; Steinhilper v. Basnight, 69 S. E. 220;
Woods v. Finley, 69 S. E. 502.

The case of Spencer & Co. v. Brown, 143 N. Y.
Supp. 994, clearly holds (citing New York cases) that
in support of a defense of "accommodation paper" or
"want of consideration," as between the payee and
maker the latter may show by parol evidence the real

agreement between the parties at the time of the execution; and this is the rule we adhere to.

The doctrine we follow does not impair or burden negotiable instruments. It only holds that a note as between the original parties is like any other simple contract. Because on its face it is drawn so that if necessary it will pass as negotiable paper does not require that it take on that character before it is negotiated as "negotiation" is defined in section 10001. There is no reason for the luggage to be dropped on this contract any more than on any other until it has sallied forth on the high seas of negotiation—until it has come into the hands of a *holder in due course* as provided by section 10022 (particularly the fourth subdivision thereof). In his hands, section 10027 provides for dropping the luggage, but in the hands of the *holder other than in due course* commercial paper is subject to the equities existing between the original parties. To hold otherwise is to deny parties, as between themselves, the right to contract concerning matters nowise unlawful, and to accomplish this result will require express and not mere implied enactment. In Missouri, for many years prior to the enactment of the uniform negotiable instruments law, as between the original parties to a note, a surety or accommodation maker could by parol evidence show the contract that was made and that he was a surety or accommodation maker although the face of the note did not disclose such fact. We therefore quote with approval the following language from the case of Sutherland v. Mead, 80 N. Y. Supp. l. c. 508, 509: We are not to impute to the Legislature an intent to change a rule of law which has existed in uniform course of enforcement for over three-quarters of a century, without a clear and unequivocal expression so to do." That case was dealing with the negotiable instruments law and it follows the act in defining a *holder for value* and a *holder in due course.* It will be observed by reading

the negotiable instruments act that there is a distinction between a *holder* or *holder for value* and a *holder in due course.* In all the circumstances enumerated in the act under which equities can be set up against the enforcement of negotiable paper, such as fraud, failure of consideration, etc.—in every instance it uses the term *holder in due course.* For example, where fraud is charged, the *holder in due course* must show that he had no knowledge of the fraud when he acquired the instrument. The same is true as to failure of consideration. In other words, the act clearly shows that it is dealing principally with paper that has been negotiated, and the determining element is whether the holder is one *in due course.*

That the act does make a distinction between the liability of a maker and an accommodation maker is shown by section 10019. To hold the accommodation maker liable under that section the holder must be one *in due course.* To hold that an accommodation maker is primarily and absolutely liable in all cases and that the equities and facts cannot be set up as between the original parties will lead to absurdity. For instance, if A signs a note payable to himself and gets B to sign it as an accommodation maker, then A could sue B and B under the primary absolute rule would be prevented from showing that he signed the note with A as an accommodation maker only, and section 10019 requires that such a note must have been negotiated or fallen into the hands of a *holder in due course* before absolute liability is fastened on him.

In the discussions of this question in all the opinions we have seen we find none taking into account the language contained in our section 10028. Such a provision is either not in the acts of other States where the decisions have been rendered, or, as is true of all the opinions under our act thus far, it has been ignored. If it is to be read out of the negotiable instruments act, then there may be some good reason for a

different view; but so long as that section remains in the act, and so long as a great number of decisions in this State stand as the law that it is not varying the terms of a note, such as is presented in this case, to show by parol evidence that a signer was an accommodation maker or a surety, we can see no escape from the conclusion we have reached.

Appellant has conceded that if the defense sought to be set up is available to defendants as accommodation makers, the judgment is for the right party and should be affirmed, and we have upheld that defense. The judgment is affirmed. However, as a conflict exists between our decision and that of the Kansas City and St. Louis courts of appeal in the Hyder and Douglass cases, this cause is certified to the Supreme Court for final determination. *Robertson, P. J.,* concurs. *Sturgis, J.,* dissents in a separate opinion.

## DISSENTING OPINION.

STURGIS, J.—I dissent from the majority opinion herein. The release of an accommodation maker of a note by reason of the surrender by the payee of security held by him is placed on the same ground as a release of such a maker by reason of the payee making a binding agreement for an extension of time. Both the plain reading of the negotiable instrument act and the great weight of authority is against the proposition that, as between the original parties to a negotiable note, an accommodation maker is discharged by reason of the payee, knowing him to be such, making a valid agreement without his consent to extend the time of payment.

It will be noticed that the negotiable instrument act dispenses with many of the terms and distinctions theretofore used and applied in the law relating to negotiable paper. The word "surety" is nowhere used. Section 10161 of this act, Revised Statutes 1909, di-

vides the parties liable on a bill or note into two classes, to-wit, those primarily liable and those secondarily liable. A person primarily liable is one "who by the terms of the instrument is absolutely required to pay the same. All other parties are secondarily liable. By section 10000, an accommodation party is defined to be "one who has signed the instrument as a maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person," and such a maker is made primarily liable, i. e., under section 10161, "absolutely required to pay the same." The payee's knowledge that one or more makers are accommodation makers makes no difference, for it is expressly provided by section 10000, supra, defining an accommodation maker, that: "Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." A holder for value is defined by section 9997, and there is no doubt but that the original payee of a note is a holder for value where the instrument represents a valid indebtedness. Section 10030, provides that: "The maker of a negotiable instrument, (which includes an accommodation maker) by making it, engages that he will pay it according to its tenor." Section 10040, provides that: "Presentment for payment is not necessary in order to charge the person primarily liable on the instrument," and no one doubts but that this includes an accommodation maker as well as the real maker. [Rouse v. Wooten, 140 N. C. 557, 53 S. E. 430.] By section 10048, presentment must be made to all persons primarily liable. By section 10054, where a note is dishonored by nonpayment, a cause of action accrues to the holder against all parties secondarily liable.

It will thus be seen that should parol evidence be admitted to show that one who is primarily liable ac-

cording to the terms of the instrument is in reality only secondarily liable many complications will arise. It seems plain that by the force of these statutes, an accommodation maker is a *maker,* a person primarily liable and "absolutely required to pay the same," one who "engages to pay it according to its tenor." This is true as between the original payee and all those signing as makers, and it does not matter that such payee knew when he took the note that one or more of the parties in fact signed as accommodation makers. As stated by the Supreme Court of Massachusetts in Union Trust Co. v. McGinty, 212 Mass. 205, 98 N. E. 679, 28 Am. Cas. 525: "It (Negotiable Instrument Act) determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation of all makers, whether for accommodation or otherwise, is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute. [Sections 77, 208.] The act makes no provision for the proof of another and different relation than that expressly undertaken and defined by the tenor of the instrument signed. The fact that one is an accommodation maker gives rise to a duty no less or greater or different to the holder for value than that imposed upon a maker who received value. This is expressly provided by the act, even though such holder knew at the time that the maker was an accommodation maker."

In the present case the note reads that: "We promise to pay" etc., and is signed by all the defendants. Our laws make all such contracts joint and several, and the contract of these parties is the same as if it read: "We jointly and each of us severally agree to pay" etc. There are many cases holding that a party cannot vary the terms of such a written contract by parol evidence regardless of the negotiable instrument act; and certainly the Legislature has power to

say that such shall be its force and effect. [Earle v. Enos, 130 Fed. 467; First Nat. Bank v. Asel, 154 Mo. App. 228, 134 S. W. 110; Willard v. Crook, 21 App. D. C. 237; Gerli v. Nat. Mill Supply Co., 78 N. J. L. 1, 73 Atl. 252.]

A strong argument in favor of the rule here contended for is found in the fact that section 10089, making provision for the discharge of those primarily liable on a note, does not include an extension of time by the holder, while section 10090 does so provide in case of one secondarily liable.

All these provisions of the negotiable instrument act, which are now in force in most of the States, have received careful attention and construction by many of the courts of last resort; and the majority opinion here is not only in conflict with the decisions of both the other Courts of Appeals in this State, but with the decisions generally. In 3 R. C. L. 506, it is stated: "Under the Negotiable Instruments Law it may be regarded as well settled that the accommodation maker or acceptor is primarily liable and is not discharged by any extension of time given to the indorser, drawer, or comaker, for whose benefit he became a party to the instrument, without regard to whether the party suing on the instrument is a party thereto as a payee, and had knowledge of the relation subsisting between the accommodation maker and the principal debtor." See cases there cited. In the late case of Cowan v. Ramsey, (Ariz.) 140 Pac. 501, the court announces the rule here contended, for, quoting from the Massachusetts case; supra, and says: "The rule expressed in the above quotation is that adopted by all the courts that have had occasion to pass upon the negotiable instrument law, (citing cases from seven States) except the lone case of Fullerton Lumber Co. v. Snouffer, 139 Iowa 176, 117 N. W. 50." In the leading cases of Vanderford v. Farmers' & Mechanics' Nat. Bank, 105 Md.

164, 66 Atl. 47, 10 L. R. A. (N. S.) 129; Cellers v. Meachem (Lyons), 49 Ore. 186, 89 Pac. 426, 10 L. R. A. (N. S.) 133, 13 Ann. Cas. 997; and Richards v. Market Exch. Bank Co., 81 Ohio St., 348, 90 N. E. 1000, 26 L. R. A. (N. S.) 99, and the notes thereto, the cases are collected and discussed and the rule here contended for is announced as being the law in all the States. So too, in the note to the Massachusetts case, supra, 28 Ann. Cas. 525, 528, the authorities are collected and it is shown that this is the well-established rule. [See also Chambers v. McLean, 24 Pa. Supp. Ct. 567, and Willard v. Crook, 21 App. D. C. 237.]

The case of Spencer & Co. v. Brown, 143 N. Y. Supp. 994, is cited in the majority opinion as supporting the contrary rule adopted in that opinion, but that case will be found to deal with the question of "want of consideration." That case does not purport to be, and I think is not, in conflict with the case of Nat. Citizens' Bank v. Toplitz, 81 N. Y. Supp. 422, where it is held that "the maker is liable primarily notwithstanding the knowledge of the holder that she was an accommodation maker only."

It is highly important that, as the Legislatures of the various States have adopted uniform laws on the subject of negotiable instruments, the courts should give a uniform construction to the same and that this State should keep in line on this question.

Most, if not all, of the cases cited deal with the question of the release of an accommodation maker because of the holder making an agreement for the extension of time; and the majority opinion has not discussed, nor will I do so, whether or not a discharge by reason of the holder releasing securities held should be placed on a different basis as being a subject not treated of by the negotiable instrument act, and the further question of defendants' equitable rights against the holder, conceding that all the parties to this note are makers and primarily and absolutely bound

to its payment, because of his surrendering or appropriating to the payment of another note the security held by him from one of the makers of. this note. See on this point Woods v. Finley, 153 N. C. 497, 69 S. E. 502.