EMPIRE TRUST COMPANY, Appellant, *v.* The President and Directors of THE MANHATTAN COMPANY, Respondent.

(Supreme Court, Appellate Term, First Department, December, 1916).

Negotiable instruments — holder of check in due course — stockbrokers — trial — bills, notes and checks — Negotiable Instruments Law, . § 35.

A stock brokerage firm drew its check to the order of plaintiff, a trust company, and gave it to one of its clerks who, in accordance with instructions, took it to defendant bank for certification to be used for the purchase of revenue stamps for plaintiff, handed it to the person at defendant bank whose duty it was to certify checks, and upon inquiry therefor, after waiting some time, it appeared that the check after certification had been taken by or erroneously handed to a third person, whereupon the clerk of the brokerage firm hurried to plaintiff's place

of business, but the person who had wrongfully taken the check from defendant had already used it for the purchase of revenue stamps from plaintiff and in order so to do the purchaser was obliged to sign a requisition and he also delivered to plaintiff a forged requisition for the stamps purporting to have been signed by the brokerage firm. In an action to recover the amount of the certified check the jury upon the only question submitted to them, to wit, whether plaintiff in accepting the check acted in good faith or in bad faith, found that plaintiff had acted in bad faith, and the trial justice dismissed the complaint on the merits not only because the verdict was justified but also because he found as matter of law that the check had never been duly negotiated and that plaintiff was not a holder thereof in due course within the meaning of section 35 of the Negotiable Instruments Law. Held, that the judgment should be affirmed.

APPEAL by the plaintiff from a judgment of the City Court of the city of New York, dismissing the complaint on the merits.

Rollins & Rollins (Philip A. Rollins and Roswell S. Nichols, of counsel), for appellant.

Rushmore, Bisbee & Stern (Henry Root Stern and Abraham Freedman, of counsel), for respondent.

LEHMAN, J.    The plaintiff has brought an action to recover from the defendant the amount of a check drawn by the firm of Homans & Co. upon their account in the defendant bank and certified by it. It appears undisputed that on the 16th day of March, 1916, the stock brokerage firm of Homans & Co. drew its check for the sum of $1,990 to the order of the plaintiff and gave the check to one of their clerks with instructions to take the check to the defendant bank for certification and, after certification, to use the check for the purchase of $2,000 par value of revenue

stamps from the plaintiff, which maintained a department for the sale of such stamps. The clerk handed the check at the defendant bank to the person whose duty it was to certify checks and after waiting some time inquired for his check. It then appeared that the check, after certification, had been taken by, or erroneously handed to, a third party. The clerk from the brokerage firm hurried over to the plaintiff's place of business, but the person who had wrongfully taken the check from the defendant bank had already used the check for the purchase of revenue stamps from the plaintiff. In order to obtain such stamps the purchaser was obliged to sign a requisition and, in the present case, the party presenting the check of Homans & Co. to the plaintiff had also delivered to the plaintiff a forged requisition for the stamps which purported · to be signed by Homans & Co. At the close of the case the trial justice submitted to the jury only the question of whether the plaintiff in accepting the check acted in good faith or in bad faith, and reserved decision, upon the defendant's motion to dismiss the complaint, until the coming in of the special verdict. The jury found that the plaintiff had acted in bad faith. Thereafter the trial justice dismissed the complaint and, in his opinion, which is part of the record, indicated that he had reached this decision not only because he felt that the verdict of the jury on the question of fact was justified, but also because he found, as a matter of law, '' that the check has never been duly negotiated and that the plaintiff is not a holder thereof in due course.''

I have serious doubts whether the jury could reasonably find that the plaintiff was guilty of bad faith. The plaintiff was probably not vigilant when it accepted the check and forged requisition; possibly it may even have been, in a sense, grossly negligent, but

there is grave question whether the negligence is sufficient to indicate actual bad faith. However, I do not think that we need consider that question for, in my opinion, even though the plaintiff accepted the check in good faith, it cannot recover.

The check made by Homans & Co. was never delivered by them to the payee, and until delivery an instrument has no legal inception. It was stolen from their possession. The thief never had any title to the check and, therefore, could not transfer title to the plaintiff. If the plaintiff can maintain an action upon an instrument which was never delivered by the maker, and by virtue of a title received from a person who himself had no title to the instrument, then this result must be due to the peculiar rules of the law merchant governing negotiable instruments, now embodied in the Negotiable Instruments Law. Section 35 of that law provides: " Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

There is no doubt that by virtue of the rule embodied

Supreme Court, Appellate Term, December, 1916.   [Vol. 97.

in that section the rule of law governing ordinary contracts or instruments, that a contract becomes effectual only by actual delivery, is modified at least to the extent that where a negotiable instrument is in the hands of a " holder in due course " a valid delivery thereof by all parties prior to him, so as to make them liable to him, is *conclusively* presumed. The real question in this case is, therefore, whether the plaintiff is " a holder in due course " within the meaning of that section.

The defendant claims that the payee is an " immediate party " to the instrument and that, therefore, in an action brought by the payee, evidence is always admissible to show that there was no valid delivery of the instrument. There seems to be some diversity of authority in the various states as to whether the payee of a negotiable instrument can ever be a " holder in due course " within the meaning of the statute. See *Boston Steel & Iron Co.* v. *Steuer*, 183 Mass. 140; *Liberty Trust Co.* v. *Tilton*, 217 id. 462, which hold that a payee is not necessarily a remote party and may be a holder in due course. See also *Vander Ploeg* v. *Van Zuuk*, 135 Iowa, 350; *Long* v. *Shafer*, 185 Mo. App. 641, which hold that a payee is an immediate party and cannot be a holder in due course and does not take free from any defenses which the maker could interpose if the instrument were non-negotiable. It is quite impossible to reconcile these decisions, but it seems to me that, even though we adopt the views expressed by the Massachusetts courts, the plaintiff has not established that *in this case* the payee is not an immediate party and is a holder in due course.

In the case of *Boston Steel & Iron Co.* v. *Steuer*, 183 Mass. 140, the facts were that the defendant, a married woman, delivered to her husband her check for

$200 made payable to the plaintiff and instructed her husband to apply it in payment of a debt which she personally owed to the plaintiff. The husband fraudulently delivered the check to the plaintiff to be used in payment of his own debt to the plaintiff. The court there held that the plaintiff, though the payee of the check and, therefore, not holding through indorsement, was yet a holder in due course. The court there stated: '' The fact that the plaintiff is the payee of a negotiable security does not prevent him from becoming a *bona fide* purchaser of it at common law, with all the rights incident to a purchaser for value thereof without notice,'' and it cites various cases in the English courts and in the Supreme Court of the United States as authority for this statement. These cases establish the proposition, I think, that where the maker of a negotiable instrument delivers it to a third party with instructions not to deliver it over to the payee of the instrument, except on certain conditions, and the party to whom the maker has delivered it fraudulently disregards his instructions and delivers it to the payee for value, the payee becomes a purchaser of the instrument. In all these cases, however, there are really two transactions. The first transaction is one between the maker and the third party by which the third party obtains possession of the instrument. The next transaction arises between the third party and the payee by which the third party delivers the instrument to the payee for value. In other words, in these cases the maker has given to a third party an instrument and has authorized the third party to transfer title to the payee by delivery, when certain conditions of which the payee has no notice are fulfilled. The third party thereupon proceeds to sell the instrument to the payee who takes without notice of the conditions. The

payee's transaction with the third party gives rise to no defense on the part of the maker; any defense which the maker might have would rise from the original transaction between the maker and the third party to which transaction the payee is a stranger, consequently where the payee purchases the instrument for value from the third party he should be entitled logically to the same protection which is afforded to any other purchaser of a negotiable instrument. There is, so far as I can see, no real difference between such a case and a case where the maker conditionally delivers a negotiable instrument to a payee and the payee sells it to an innocent purchaser and endorses the note to him. In both cases the maker has put into the hands of a party upon secret instructions or conditions an instrument which that party can put into circulation. In both cases the holder has transferred the note to another man in such a manner as to make the transferee the holder of the note and in neither case has the transferee had anything to do with the earlier transaction between the maker and the person to whom the maker delivered the note. There is little doubt that a payee who purchases the note under such circumstances comes within the protection afforded ordinarily to a purchaser for value unless the Negotiable Instruments Law has changed the common law or law merchant. Even in the case of *Vander Ploeg* v. *Van Zuuk, supra,* the court stated: " The conclusion which we reach is perhaps different from what it would have been had the Negotiable Instrument Acts not been passed." There are, however, two important points of difference between the case we have under consideration and all the other cases which have arisen either under the law merchant or the Negotiable Instruments Act. In the present case the maker never had any transactions

with the party who attempted to transfer the note to this plaintiff. That party had merely stolen the note from the drawer or drawee. Moreover, that party never claimed to have the right to deliver the note to the payee except as agent for the maker in payment of stamps sold to the *maker*. The plaintiff sold these stamps to the person in possession of the check knowing that the check was entrusted to some person for the sole purpose of paying for stamps requisitioned by the maker of the check. In other words while it did not know that the check was in the hands of a thief, it did know that it was in the hands of a person who had no right to deliver this check except for the purpose of paying for stamps sold to the maker. The defense in this case is that the check was delivered by a person having no authority to make the check effective by delivery. That defense arises not from any transaction with the third party by which a limitation unknown to the payee was imposed upon the third party's right to deliver the check. It arises from the fact that the payee accepted the check because it believed that the thief had authority to use the check in payment of stamps sold and delivered to the maker. It never sold any stamps to the maker but was fooled by a forged requisition into the belief that the thief was buying and receiving the stamps for the maker. There was no delivery of the check because, in the transaction to which the plaintiff was a party, the plaintiff failed to sell and deliver the stamps to the maker although it was informed that the maker had authorized the delivery of the check only upon that condition. The payee in such a case is not a purchaser of the check nor a remote party either to the instrument or to the transaction but, on the contrary, its claim of title to the check rests upon a transfer of possession from one who at best appeared to have author-

ity to deliver the check and make it a valid contract only for a consideration which the plaintiff has failed to deliver. I have found no case either at common law or under the statute which holds that the payee who receives the check under such circumstances is a "holder in due course," and I do not think that on principle he can derive any rights from such a transfer.

These views are somewhat strengthened by the opinion of the Supreme Court of Massachusetts in the case of *Liberty Trust Co.* v. *Tilton, supra,* upon which the plaintiff seems largely to rely. In that case the payee of the note sued an accommodation indorser who signed the note in blank, upon the express condition that the maker should fill in the note and deliver it only after certain conditions were met. The court there held that the payee was a purchaser for value. In that case the court again reviewed the authorities on the point of whether the payee of a note could ever be a holder in due course and especially its earlier decision in *Boston Steel & Iron Co.* v. *Steur, supra.* It stated that the effect of that decision was to hold that the words "immediate parties" as used in the Massachusetts Negotiable Instruments Law which is similar to our own statute, "did not necessarily include the payee. Hence 'immediate parties' in that connection excludes a party who is a holder in due course. In such case these words must be confined to parties who are 'immediate' to the conditions or limitations placed upon the delivery in the sense of knowing or being chargeable with notice of them. A payee who is a holder in due course is not an immediate party in the sense of that section. This result follows from holding that a payee may be a 'holder in due course' as defined in

section 69, because he could become such holder only on condition. ' 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument.' Thus he could not be such holder unless the paper was ' negotiated ' to him. Therefore the word ' negotiated ' was held to describe the means by which a payee might acquire a note. It was given its common legal significance of concluded by bargain or agreement. *Palmer* v. *Ferry,* 6 Gray, 420, 423; *Everson* v. *General Accident, Fire & Life Assurance Co.,* 202 Mass. 169, 172. A promissory note complete as to form and payable to a named person may be negotiated to that person by being sold to him or taken by him for value. This is the common and popular signification of the word. It was the sense in which it was used in the law merchant before the negotiable instruments act. Its meaning has not been changed by the act. That was in substance the decision in *Boston Steel & Iron Co.* v. *Stauer,* 183 Mass. 140.''

The court also held that there had been a delivery by the indorser prior to the filling in of the blanks and the delivery to the payee within the meaning of section 31 of the act (section 33 of our statute). It seems to me that this decision rests upon three elements. *First,* that the defendant charged with liability in that case had made a conditional '' delivery '' within the meaning of the statute; *second,* that the payee was a stranger to these conditions; *third,* that the person to whom the defendant delivered the note transferred it to the payee by bargain or agreement which would have been valid except for conditions made by the defendant to which the payee was a stranger. In the present case as shown above, no such elements exist. There never was a delivery of the check conditional or otherwise by any party to the note. It was feloni-

ously taken. The payee was not a stranger to the conditions upon which the maker had authorized delivery to the payee and, finally, the note was not " negotiated " to the payee by bargain or agreement but was delivered to the payee to become a complete and valid instrument only upon the payee selling to the maker the stamps for which this check was actually drawn. In other words, if there was a bargain or agreement made with the payee, it was an agreement with the maker to sell to the maker, and not to a thief, the stamps. In the absence of these elements, I do not think that even under the Massachusetts rule is this plaintiff a holder for value.

It follows that the judgment should be affirmed, with costs.

WHITAKER, J., concurs; FINCH, J., not sitting.

Judgment affirmed, with costs.