FOSTER et al. v. SECURITY BANK & TRUST CO. (No. 461–3989.)

(Commission of Appeals of Texas, Section B. Dec. 1, 1926.)

1. Bills and notes ⬅️63—Until there has been delivery of note with intention to make it effective, it is not binding on any one (Negotiable Instruments Act, § 16).

Until there has been delivery of note with intention to make it effective, it is no more than an offer of contract for negotiable instrument and is not binding on any one, even though it comes into hands of intended payee, in view of Negotiable Instruments Act, § 16 (Rev. St. 1925, art. 5932).

2. Bills and notes ⬅️338—Payee as an immediate party to instrument cannot be holder in due course (Negotiable Instruments Act, §§ 16, 30, 52).

Payee of note as an immediate party to instrument cannot be holder in due course under Negotiable Instruments Act, §§ 16, 30, and 52 (Rev. St. 1925, arts. 5932, 5934, 5935), since statute does not conclude question of delivery as between immediate parties, but does conclusively presume delivery by each prior owner, where note is in hands of holder in due course.

3. Bills and notes ⬅️63—Before an instrument is "issued" there must be delivery to person who takes it as holder (Negotiable Instruments Act, § 191).

There must be a delivery of instrument to person who takes it as a holder before such instrument is "issued," under Negotiable Instruments Act, § 191 (Rev. St. 1925, art. 5948).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Issue.]

4. Bills and notes ⬅️58, 338—Note, signed by bank directors with understanding that cashier would write name of bank above their signatures, but delivered to payee without such writing held not issued, and payee was not holder in due course (Negotiable Instruments Act, §§ 16, 30, 52, 191).

Where bank directors signed their names to note payable to another bank with understanding that cashier would write name of bank above their signatures and word "directors" after their names, so that they would be signing in official capacity, and cashier delivered note to payee without doing as instructed, held there was no issuance of completed promissory note to be negotiated, and payee was not holder in due course, in view of Negotiable Instruments Act, §§ 16, 30, 52, 191 (Rev. St. 1925, arts. 5932, 5934, 5935, 5948).

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by Samuel A. Foster and others against the Security Bank & Trust Company. Judgment for plaintiffs was reversed and rendered by the Court of Civil Appeals in 249 S. W. 227, and they bring error. Judg-ment of Court of Civil Appeals reversed, and that of district court affirmed.

Burges & Burges, of El Paso, and Lynch & Stratton, of Clifton, Ariz., for plaintiffs in error.

Winter, McBroom & Scott, of El Paso, for defendant in error.

SPEER, J. S. A. Foster, C. P. Austin, James Edgar, W. H. Graham, B. S. Jackson, and J. A. Leahy brought this suit against the Security Bank & Trust Company to cancel a note executed by them and D. L. Hill reading as follows:

"El Paso, Tex., Feb. 14, 1921.

"For value received on demand after date I or we promise to pay to the order of Security Bank & Trust Company, at its office in El Paso, Texas, forty three thousand nine hundred thirty-one and 99/100 dollars, with interest at the rate of 8 per centum per annum from date until paid; interest payable annually, and defaulting interest to draw the same rate of interest as principal. Having deposited with the Security Bank & Trust Company as collateral security for the payment of this note or any renewal thereof and any other liability or liabilities of the undersigned to the said Security Bank & Trust Company, either as maker(s), or indorser(s), or guarantor(s), due or to become due, or which may hereafter be created, the securities or property below mentioned, the said Security Bank & Trust Company or any holder hereof is invested with a full authority to at any time use, transfer, hypothecate, and in the event of the nonpayment of this note or any other liability of the undersigned to the said Security Bank & Trust Company at maturity, sell and convey at public or private sale the securities or property hereby hypothecated or any accounts or property substituted therefor, or any part thereof, or cause the same to be done with or without notice or demand of any sort, at such time or place and upon such terms as the holder hereof may deem best, and the holder hereof is authorized to purchase said securities or property when so sold; proceeds of such sale shall be applied toward the payment of this note and to such other liabilities of the undersigned, to the said Security Bank & Trust Company whether as maker(s), indorser(s), or guarantor(s) due or to become due, together with all protests, damages, interest, cost, and charges due upon this note (or) and any other such liabilities aforesaid or in the execution of this power, together with cost of collection, including attorney's fees, and the balance, if any, to the undersigned. It is understood and agreed that should there be any depreciation in the value of the securities or property hereby hypothecated or should the holder hereof at any time before or after maturity for good or imaginary cause deem itself insecure, the said Security Bank & Trust Company is hereby authorized to immediately apply, as a credit hereon, any balance with it, standing at the credit of the maker hereof, (or) and such amount of additional security shall be furnished by the undersigned as will be satisfactory to the holder hereof, and should such ad-

ditional security not be furnished within twenty-four hours after written or verbal demand so to do, then this note, at the option of the holder, shall become immediately due and payable as though the whole time for which it was given had elapsed, and the holder hereof, its agents or assigns, is authorized to sell the said securities or property below mentioned or any securities or property substituted therefor or added thereto as above provided. It is also agreed that should default occur in the payment of this note or any other obligation to the said Security Bank & Trust Company upon which the undersigned is liable, as further security, the said Security Bank & Trust Company is hereby authorized to hold all other securities, money or property deposited with it, owned by or in which the undersigned is interested, and apply the same, or the proceeds thereof, to the payment of the obligations of the undersigned to the said Security Bank & Trust Company. Should other collateral or property be substituted in whole or in part for that mentioned below or should additional collateral or property be furnished, then such substitute (or) and added collateral or property shall be subject to the same terms and conditions of this note as if originally deposited and mentioned herein. The maker(s), indorser(s), (or) and guarantor(s) hereon hereby waive demand, notice, protest, diligence, or suit, and the Security Bank & Trust Company or other holder hereof is hereby released from any and all liability of every kind pertaining to the collection, or failure to collect, the above-mentioned collateral, and all other collateral which the said Security Bank & Trust Company may, at any time, hold to secure this and all other obligations of the maker hereof to said Security Bank & Trust Company.

"B. S. Jackson.　　J. A. Leahy.
"D. L. Hill.　　　James Edgar.
"W. H. Graham.　　C. P. Austin.
　　　　　　　　　　"S. A. Foster.
"Secured by notes as per list attached aggregating $43,931.90.
"No. 15620.
"Address: Lordsburg, N. M."

Then follows indorsements on the back of the note not necessary to copy here.

The trial court rendered judgment canceling the note as to Foster, Austin, Edgar, Jackson, and Graham, but decreeing a recovery in favor of the bank against Hill and Leahy for $38,108.90, principal and interest on the note, and for $4,781.89 as attorney's fees. The bank appealed, but Hill and Leahy did not. The Court of Civil Appeals reversed the judgment of the trial court, and, after allowing a credit for certain notes, renewal of which were accepted by appellant without authority, rendered judgment in appellant's favor against Foster, Austin, Edgar, Graham, Jackson, Hill, and Leahy for the sum of $18,635.58, and for the further sum of $2,888.55 as attorney's fees and also rendered judgment against Hill and Leahy for the further sum of $19,383.32, and for the additional sum of $1,893.34 as attorney's fees, the principal sums in each instance to bear interest at the rate provided in the note. See 249 S. W. 227.

The plaintiffs in error contend that the Court of Civil Appeals erred in holding: First, that the note was a negotiable instrument; second, that the bank, having taken the note, as the original payee named therein, was nevertheless a holder in due course; third, that plaintiffs in error were estopped to deny personal liability upon the note; fourth, that the bank paid a valuable consideration for the note; fifth, that D. L. Hill did not act as the agent of the defendant in error in obtaining the signature of the plaintiffs in error to the note. Most of these questions are settled by our conclusions upon the second point of complaint.

Whether or not the payee in a promissory note may become the holder thereof in due course has never been expressly decided, we believe, in this state, but the question has been often before other courts, and the authorities are most respectable and numerous both ways upon the question. Amongst those holding the affirmative, may be cited Ex parte Goldberg, 191 Ala. 356, 67 So. 839, L. R. A. 1915F, 1157; Liberty Trust Co. v. Tilton, 217 Mass. 462, 105 N. E. 605, L. R. A. 1915B, 144; Merchants' Nat. Bank v. Smith, 59 Mont. 280, 196 P. 523, 15 A. L. R. 430; Johnston v. Knipe, 260 Pa. 504, 105 A. 705, L. R. A. 1918E, 1042; Trust Co. v. Manhattan Trust Co., 97 Misc. Rep. 694, 162 N. Y. S. 629. Whilst to the contrary are the following: Long v. Shafer, 185 Mo. App. 641, 171 S. W. 690; St. Charles, etc., Bank v. Edwards, 243 Mo. 553, 147 S. W. 978; Bank of Gresham v. Walch, 76 Or. 272, 147 P. 524; Builders' Co. v. Weimer, 170 Iowa, 444, 151 N. W. 100, Ann. Cas. 1917C, 1174; Bowles v. Clark 59 Wash. 336, 109 P. 812, 31 L. R. A. (N. S.) 613. Other cases might be added to each list. We shall not undertake to decide the question on the weight of reasoned authorities, but prefer rather to decide it upon our own interpretation of the statute.

For the purpose of this opinion, we will assume that the note is negotiable. Section 52 of our Negotiable Instruments Act (Rev. Civ. St. 1925, art. 5935), declares:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

It thus appears that before one can be a holder in due course the instrument must have been "negotiated to him" by one as to

whose "title" he had no notice of any in-firmity.

Now, section 30 (Rev. St. 1925, art. 5934), defines "negotiated" as follows:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery."

It is thus apparent that in the act of negotiation there must be a transferer and a transferee. There must of necessity be an "instrument," the subject-matter of the transfer. This instrument must be owned by the transferer, whose title at least must not have been known to the transferee as having any infirmity. In other words, the subject of the transfer must be an instrument with all the elements of completeness in form and other requirements affecting the validity of its issuance. It must have been at the time of the transfer a negotiable instrument. It is suggested that the language, "if payable to bearer it is negotiated by delivery," supports the view that a delivery to the payee is a negotiation of the instrument. But not so at all. The act is speaking of completed instruments—delivered instruments. Such an instrument payable to bearer is negotiated by mere delivery.

Section 16 of the Act (Rev. St. 1925, art. 5932), provides:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto."

[1] Until there has been a delivery of such instrument there is no more than the offer of a contract for a negotiable instrument. It is nothing binding on any one, and the question is not affected by its coming into the hands of the intended payee. The same section further provides:

"As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed."

[2, 3] The statute thus refuses to conclude the question of delivery as between the immediate parties, but does conclusively presume a delivery by each prior owner where the note is in the hands of a holder in due course, thus clearly showing that the payee as an immediate party to the instrument cannot be a holder in due course. The reason for the doctrine of protection of a holder in due course of a negotiable instrument is the favor which the law puts upon such commercial transactions to facilitate confidence in commercial paper and to expedite transfers thereof free from hidden infirmities. It is an aid to a transfer of a completed instrument, and has nothing to do with the issuance and completeness of such instrument. Until there has been a complete issuance there is nothing, as between the immediate parties, to transfer, therefore there can be no transferee nor passing of any sort of title. That there can be no complete instrument until there has been a delivery with intention to make the instrument effective as such, is well settled in this state. Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Coleman v. Easton (Tex. Com. App.) 249 S. W. 200; Silliman v. Oliver (Tex. Civ. App.) 233 S. W. 867; Id. (Tex. Civ. App.) 247 S. W. 903 (writ refused); Morris v. Logan (Tex. Civ. App.) 273 S. W. 1019 (writ refused). Indeed, the act defines "issue" as "the first delivery of the instrument, complete in form, to a person who takes it as a holder." Article 5948, § 191. It is thus further made clear that there must be a delivery of the instrument to a person who takes it as a holder before such instrument is said to be "issued."

[4] We are not considering a note drawn to the maker's own order, for such a note is complete when indorsed by the maker and might therefore become the subject-matter of transfer and be negotiated to another, within the meaning of the act. But in the present case, under the allegations of the plaintiff's petition, there has never been the issuance of a completed promissory note in any event to be negotiated. There has been no first holder, much less a holder in due course of negotiation. It cannot be that the statutory definition of "holder" as "the payee or indorser of a bill or note who is in possession of it" covers the case of a bill or note incomplete for want of delivery. As we have shown, until there is a delivery in the first place, there is no bill or note as between the immediate parties. The statute merely means that a payee or indorsee of a bill or note duly issued is a "holder."

The evidence, we think, did not raise any issue of estoppel, aside from the question of holder in due course.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed and that of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.